# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 3772 | **DATE** | 1/17/2003 |
| **CASE TITLE** | Jacob L. McGovern vs. Village of Oak Lawn, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion And Order. Defendants' motion for summary judgment (Doc. No. 29-1) is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 2 | |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | JAN 21 2003 | |
| | Notified counsel by telephone. | | date docketed | 40 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 1/17/2003 | |
| | | 03 JAN 17 PM 5:24 | date mailed notice | |
| ETV | courtroom deputy's initials | Date/time received in central Clerk's Office | ETV mailing deputy initials | |



| | |
|---|---|
| JACOB L. McGOVERN, <br><br> Plaintiff, <br><br> v. <br><br> VILLAGE OF OAK LAWN, OFFICER M. ACKE, Star #281, SERGEANT T. SCOTT, Star # 267, OFFICER J. PACETTI, Star #618, and the COOK COUNT SHERIFF, <br><br> Defendants. | No. 01 C 3772 <br><br> Judge Rebecca R. Pallmeyer |

## MEMORANDUM OPINION AND ORDER

The facts giving rise to this lawsuit took place early on the morning of June 3, 2000 when James Pacetti, a Cook County Sheriff's Officer, utilized a police dog to apprehend and arrest the Plaintiff, Jacob L. McGovern. In Count I of his complaint, McGovern invokes 42 U.S.C. § 1983, alleging that Pacetti used excessive force in violation of Plaintiff's rights under the Fourth and Fourteenth Amendments by instructing his trained police dog to bite McGovern multiple times in conjunction with his arrest. In Counts II and III, McGovern alleges Illinois common law claims for assault and battery against Officer Pacetti and the Cook County Sheriff's Department. The Defendants now move for summary judgment. They argue that Plaintiff's § 1983 claim fails because as a matter of law Officer Pacetti's use of the police dog was reasonable; the assault and battery claim against Officer Pacetti fails because McGovern did not demonstrate that Officer Pacetti lacked a legal justification for using the dog to apprehend and arrest him; and because Officer Pacetti is not liable for the injuries sustained by the Plaintiff, the Sheriff of Cook County is immune from liability under the Illinois Tort Immunity Act.

For the foregoing reasons, the Defendants' motion is denied.



# FACTUAL BACKGROUND[1]

At approximately 2:00 A.M. on the morning of June 3, 2000, the Plaintiff, Jacob McGovern, who was driving his vehicle through a residential area in Oak Lawn, Illinois was pulled over by Michael Acke, a police officer with the Oak Lawn Police Department.[2] (Defendants' Statement of Material, Uncontested Facts ¶¶ 3, 10) (hereinafter, "Defs.' 56.1.") As a result of a computer check of the Plaintiff's car, Officer Acke learned that McGovern was wanted on two warrants, that his driver's license was suspended, and that he was believed possibly armed and dangerous. (Id. at ¶ 10.) After stopping his vehicle, McGovern, who was wearing short pants and a short sleeve shirt and was barefoot, immediately exited his vehicle to speak with Officer Acke. (Defs.' 56.1 ¶ 4; Plaintiff's Statement of Additional Facts ¶¶ 4, 7) (hereinafter, "Pl.'s 56.1.") While standing at the back of McGovern's car, Officer Acke asked McGovern some questions and, in response, McGovern provided false information. (Defs.' 56.1 ¶¶ 6, 8.) Specifically, McGovern lied to Officer Acke about his name and date of birth.[3] (Id.)

After McGovern supplied this false information, Officer Acke started to reach for the police radio he wore on his chest, but before Officer Acke could use the radio, McGovern turned around and ran from the scene. (Id. ¶ 9) Officer Acke claims that McGovern hit him before running away, an allegation that McGovern denies. (Id. ¶ 12; McGovern's Deposition, Exhibit 2 to Plaintiff's 56.1 Statement (hereinafter "McGovern's Dep."), at 28.) There is no dispute, however, that McGovern

---

[1] The court compiled the facts for this section from the parties' Local Rule 56.1(a)(3) and (b)(3) Statements of Material Facts and attached exhibits. As described below, these statements reflect a number of factual disputes between the parties. Plaintiff has also made a number of evidentiary objections in response to certain assertions in Defendants' 56.1 Statement, but because the court has denied the Defendants' motion for summary judgment, these objections are moot.

[2] The parties do not explain what led Officer Acke to stop McGovern.

[3] The parties do not explain how Officer Acke knew that this information was false or how he discovered the Plaintiff's true name and date of birth.

2

made a highly spirited attempt to escape Officer Acke by climbing over several fences and running through a number of yards in the residential neighborhood. (Defs.' 56.1 ¶¶ 13-15).

Officer Acke immediately pursued the Plaintiff and at the same time requested the assistance of other officers. (*Id.* ¶ 17) As officers responded, they set up a perimeter to contain the general area where McGovern was running. (*Id.* ¶ 18.) Among the officers to respond to Officer Acke's request for assistance was James Pacetti, a certified canine handler and police officer with the Cook County Sheriff's K-9 unit, accompanied by Arno, a certified police dog. (*Id.* ¶¶ 20, 22.) When Officer Pacetti arrived at the scene, Officer Acke advised him that the suspect had hit Acke before fleeing the scene of a traffic stop. (*Id.* ¶ 23.) Officer Acke also told Officer Pacetti that the suspect had two active warrants and might be armed. (*Id.*)

At an undetermined point in the chase, McGovern recognized that he was not going to escape the police by running and decided to hide. (*Id.* ¶¶ 24-26.) After leaping a five foot privacy fence, Plaintiff discovered a wood and metal trailer located in a homeowner's backyard, which he selected as his hiding spot. (*Id.* ¶¶ 25-26.) Plaintiff crawled underneath the trailer into an area that was just big enough for his body to fit. (*Id.* ¶ 27.) Although it was dark underneath the trailer, the yard around the trailer was lit by street lights and a house porch light. (Pl.'s 56.1 ¶10.) The area beneath the trailer in which Plaintiff hid was partially surrounded by a fence. (Defs.' 56.1 ¶ 28.)

Soon after crawling under the trailer, McGovern heard four or five unnamed officers talking in the yard near the trailer. (*Id.* ¶ 29.) The officers were unable to locate McGovern on their own and asked that Officer Pacetti and his dog Arno assist in the search. (*Id.* ¶ 30.) Officer Pacetti then brought his dog to the area near where McGovern was last seen and near where the Plaintiff was in fact hiding. (*Id.*)

At this point in the sequence of events, the parties' versions begin to vary; they dispute how Officer Pacetti and his dog performed the search and subsequent seizure of McGovern. According to Officer Pacetti, after he arrived on the scene with Arno, he called out to identify himself and the

3

canine. (Pacetti Deposition, Exhibit 2 to Defs.' 56.1, at 73; Pacetti's Trial Testimony, Exhibit 3 to Defs.' 56.1 (hereinafter "Pacetti's Trial Testimony"), at 62.) Specifically, Officer Pacetti shouted that he was with the Cook County Sheriff's Police Canine Unit and if the Plaintiff did not identify himself, the dog would be released to search for him. (*Id.*) Officer Pacetti claims, further, that he repeated this initial warning three times. (Pacetti's Trial Testimony, at 62.) At the conclusion of these warnings, he added, "This is your final warning from the Sheriff's Police Canine. Announce yourself or the dog will be utilized for search." (*Id.* at 63.)

McGovern denies that Officer Pacetti yelled out a warning prior to releasing the dog, but does acknowledge hearing someone yell that a canine was going to be released into the yard to perform a search. (McGovern's Dep., at 42.) He remained in his hiding spot, however, because he was afraid to come out. (*Id.* at 42-43.)

Initially, both sides agree, Arno was released to do a "find and bark" search and ultimately found the Plaintiff underneath the trailer. (Defs.' 56.1 ¶¶ 37-39.) McGovern felt something cold at the bottom of his feet and when he looked down he realized it was the dog's nose touching his bare feet. (McGovern's Dep., at 43.) At this point, Officer Pacetti and the other officers located the Plaintiff on the ground hiding underneath the trailer. (Defs.' 56.1 ¶ 40.) McGovern remembers seeing flashlights light up the space underneath the trailer and hearing a number of officers yell that they had found him, while the dog remained by his feet. (McGovern's Dep., at 44.)

The parties dispute what happened next. According to Pacetti, after McGovern was located, Pacetti recalled the dog and issued a second round of verbal warnings, which he again repeated three times, warning that the Plaintiff must come out or the dog would be used to apprehend him. (Pacetti's Trial Testimony, at 65-66.) McGovern did not come out from underneath the trailer, however (Defs.' 56.1 ¶¶ 43-44), and Officer Pacetti ordered Arno to apprehend the Plaintiff. (Pacetti's Trial Testimony, at 67.) In response to this order, Arno went under the trailer and bit the Plaintiff's left arm, his right calf, and the lower backside of his right hip.

4

(Defs.' 56.1 ¶ 46.) After these bites, Officer Pacetti recalled Arno to his side. (Id. ¶ 45.)

Plaintiff disputes the details concerning these initial dog bites. First, McGovern asserts that after finding Plaintiff, the dog never retreated or returned to Officer Pacetti. (McGovern's Dep., at 44.) In addition, McGovern denies that Officer Pacetti issued a second warning before the dog bit him. (Id. at 43-45.) Lastly, he claims that the bites took place after the officers started yelling and the dog became agitated. (Id.) Both sides agree, however, that at some point after these initial bites, the dog stopped biting McGovern, and Plaintiff offered to surrender. (Defs.' 56.1 ¶ 46.) Despite this offer, Plaintiff did not immediately come out from his hiding spot because he was afraid of the dog. (Id. ¶ 48.) The parties further agree that after the initial bites, certain officers ordered McGovern to put his hands in the light of a flashlight to allow the officers to see his hands. (Id. ¶ 50.) McGovern asked that the dog be called off before he put his hands into the light and the officers refused. (Id. ¶ 51.) McGovern notes that when the officers ordered him to put his hands in the light, his ability to get out from under the trailer was inhibited by a fence on one side and the axle of the trailer itself. (McGovern's Dep., at 48-49.) According to McGovern, his only way out was blocked by the dog. (Id.) McGovern claims that when he eventually attempted to put his hands in the light, as instructed, the dog bit one of his forearms.[4] (Pl.'s 56.1 ¶¶ 32-33; McGovern's Dep., at 50-51.)

Officer Pacetti claims that he issued another warning to the Plaintiff, to put his hands in the light or the dog would be used to apprehend him. (Defs.' 56.1 ¶ 52.) Plaintiff denies hearing any such warning. (McGovern Deposition, Exhibit 3 to Pl.'s 56.1, at 50-52.) According to Officer Pacetti, Plaintiff refused to put his hands into the light; as a result, Officer Pacetti ordered Arno to

---

[4] Defendants do not dispute this fact as set forth in the Plaintiff's Local Rule 56.1 Statement. The court notes, however, that as part of their own previously filed Local Rule 56.1 Statement Defendants asserted that Officer Pacetti ordered the dog to apprehend the Plaintiff for a second time because Plaintiff refused to put his hands into the light, from underneath the trailer. (Defs.' 56.1 ¶ 52.)

5

apprehend the Plaintiff for a second time. (Defs.' 56.1 ¶ 52.) In response to this order, Arno went underneath the trailer and obtained a secure hold of the Plaintiff's right arm with his mouth and dragged the Plaintiff from his hiding spot underneath the trailer into the yard, where six or eight officers were standing . (Id. ¶¶ 53, 55, 57.)

McGovern's knees were bloody from being dragged by the dog. (Id. ¶¶ 59-60.) Even after pulling him out in the yard, the dog kept his hold on Plaintiff's arm while the police ordered the Plaintiff to be still. (Id.) The officers eventually removed the dog from Plaintiff's right arm and the dog bit his left arm. (Pl.'s 56.1 ¶ 41.) The dog was then removed from McGovern's arm and Plaintiff was immediately taken into police custody. (Defs.' 56.1 ¶ 70.)

The entire incident, between the time the dog found the Plaintiff until he was dragged out, lasted several minutes. (Id. ¶ 43.) McGovern was later taken by ambulance from the scene to Christ Hospital, where he was treated for lacerations to his forearms and for abrasions on his knees and his right foot. (McGovern's Medical Records from Christ Hospital, Exhibit 5 to Defs.' 56.1, at C2-C3.) Although the medical records refer to dog bites only on Plaintiff's arms, he claims that he also suffered dog bite wounds to his back right hip. (Pictures of McGovern's Injuries, Exhibit 4 to Pl.'s 56.1.)

On December 13, 2001, the Plaintiff was prosecuted for a number of misdemeanor offenses in connection with these events. (Defs.' 56.1 ¶ 70.)

## DISCUSSION

The court will grant summary judgment only where "there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law." *Washington v. LaPorte County Sheriff's Dept.*, 306 F.3d 515, 517 (7th Cir. 2002) (quoting FED. R. CIV. P. 56(c)). The question thus becomes "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

6

*Brownell v. Figel*, 950 F.2d 1285, 1289 (1991) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2511-12 (1986)). The court will not make "credibility determinations nor choose between competing inferences" when deciding a motion for summary judgment. *Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1041 (7th Cir. 1993). In addition, the court will view the facts in the light most favorable to the non-moving party. *Kraushaar v. Flanigan*, 45 F.3d 1040, 1044 (1995). "Summary judgment is only appropriate when the record reveals that no reasonable jury could find for the non-moving party." *Id.* (quoting *McCoy v. WGN Continental Broadcasting Co.*, 957 F.2d 368, 370 (7th Cir. 1992). With these standards in mind, the court considers Plaintiff's three claims in turn.

### Excessive Force Claim

In the first count of his complaint, McGovern claims that Officer Pacetti violated his Fourth and Fourteenth Amendment rights by using excessive force when he ordered his police dog to bite Plaintiff, resulting in lacerations that required medical treatment. In this motion for summary judgment, Officer Pacetti argues that given the circumstances of the situation and the perceived threat posed by McGovern, as a matter of law his use of a police dog to apprehend the Plaintiff was reasonable.

A police officer's use of excessive force during an arrest constitutes a Fourth Amendment violation actionable under 42 U.S.C. § 1983. *Graham v. O'Connor*, 490 U.S. 386, 395-96, 109 S.Ct 1865, 1871 (1989). As the *Graham* Court explained, excessive force claims under § 1983 are to be analyzed using the Fourth Amendment's "reasonableness" standard. *Id.* Determining whether that standard is met "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Estate of Phillips v. City of Milwaukee*, 123 F.3d 586, 592 (7th Cir. 1997) (quoting *Graham*, 490 U.S. at 396, 109 S.Ct. at 1871).

7

An officer's right to make an arrest also carries with it the right to use some amount of physical coercion to carry out that arrest. *Lanigan v. Village of East Hazel Crest*, 110 F.3d 467, 475 (7th Cir. 1997) (citing *Graham*, 490 U.S. at 396, 109 S.Ct. at 1872). In reviewing the amount of force used in effectuating an arrest, the court must examine the facts and circumstances of the particular arrest, taking account of "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396, 109 S.Ct. at 1872 (citing *Tennessee v. Garner*, 471 U.S 1, 8-9, 105 S.Ct. 1694, 1699-1700 (1985)). The reasonableness of the force used in making a particular arrest must be examined from the "perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Estate of Phillips*, 123 F.3d at 592 (quoting *Graham*, 490 U.S. at 396, 109 S.Ct. at 1872). Finally, in an excessive force case, the Fourth Amendment's "reasonableness" standard is an objective one: "[T]he question is whether the officer's actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* (quoting *Graham*, 490 U.S. at 397, 109 S.Ct. at 1872).

In his motion for summary judgment on this count, Officer Pacetti argues that his actions were reasonable as a matter of law because prior to releasing the dog he was told that the suspect had hit an officer, fled a traffic stop, was wanted on two warrants, and might be armed. Officer Pacetti cites two cases from the Sixth Circuit in which the court held that the use of a police dog to effectuate an arrest was reasonable. *See Matthews v. Jones*, 35 F.3d 1046 (6th Cir. 1994) (officer's use of a police dog to apprehend a fleeing suspect was reasonable, even though the dog bit the suspect after the dog found the suspect hiding in the woods); *Robinette v. Barnes*, 854 F.2d 909 (6th Cir. 1988) (the use of a police dog to search a building for a burglar, believed by police to be hiding inside the building, was not excessive force even though the dog killed the suspect).

8

Officer Pacetti relies most heavily on *Matthews*, which in many respects is factually similar to the case before this court. In *Matthews*, the plaintiff was driving drunk and on a suspended license. 35 F.3d at 1048. After pulling over, the plaintiff attempted to evade the police by running into a nearby wooded area to hide. *Id.* The officers used a police dog, who soon found the plaintiff hiding in some weeds. *Id.* The officers instructed the suspect to remain still, but he did not heed this warning and instead moved to get up, at which time the dog bit him on the arm. *Id.* The dog's handler then instructed the dog to release the plaintiff and the two officers took him into custody. *Id.*

Examining these circumstances under the factors set forth in *Graham*, the Sixth Circuit affirmed summary judgment for the officer. *Id.* at 1050-51. In finding that the use of the dog was reasonable under the circumstances, the court noted that the officers "did not know the extent of crimes that Matthews might have committed nor did they know whether he was armed." *Id.* The court further noted that the wooded area provided the plaintiff with ample opportunity to ambush the officers and his attempts to evade the police "provided cause for the officers to believe that he was involved in activity considerably more nefarious than mere traffic violations." *Id.*

In the case before this court, as in *Matthews*, the officers pursuing McGovern did not know the exact extent of his crimes or whether he was armed. In fact, Officer Pacetti had more information than the officers in *Matthews* because he had been told by Officer Acke that McGovern might be armed. Furthermore, both Matthews and McGovern made deliberate and zealous attempts to escape, which the Sixth Circuit noted could provide the officers with reason to believe that the suspects were involved in criminal activity that went beyond mere traffic violations. Nevertheless, *Matthews*, while factually similar in many respects, does not, in this court's view, require a finding that Officer Pacetti's use of the police dog was reasonable as a matter of law.

The *Graham* Court observed that in addition to considering the nature of the offense

9

involved and dangerousness of the suspect, courts assessing an excessive force claim should also examine whether the suspect is "actively resisting arrest or attempting to evade arrest by flight." *Id.*, 490 U.S. at 396. Because of this factor and the facts presented by this case, the court is unwilling to grant summary judgment on this issue. Reviewing the record in the light most favorable to the Plaintiff, as required on this motion, the court finds a genuine issue of fact as to whether McGovern was surrendering to the authorities prior to being dragged from his hiding spot by the dog. According to McGovern's version of events, he offered to surrender and attempted to comply with the officer's request to put his hands in the light, only to be bitten by the dog. If McGovern's version is believed, it presents a different factual situation than *Matthews*, where the plaintiff was bitten by the dog while disregarding the officers' orders and presumably attempting to escape. *See Watkins v. City of Oakland*, 145 F.3d 1087 (9th Cir. 1998) (affirming the denial of defendant's motion for summary judgment on an interlocutory appeal because plaintiff claimed that the officer allowed a police dog to bite him even though he complied with the officer's requests and was no longer a threat).

Furthermore, the court notes that McGovern's hiding spot allowed neither a means of escape from the authorities nor an opportunity to ambush the officers. In contrast to the suspect in *Matthews*, who was found in the open woods, McGovern was pinned down underneath a trailer, his only exit blocked by the officers and the police dog. Neither party has cited, nor has the court found, any case that examined the reasonableness of a police officer's use of a trained dog to forcibly remove a suspect from a confined hiding space. After reviewing the totality of the circumstances and applying the factors set forth in *Graham*, the court believes a reasonable juror could find that the officers' use of force in these circumstances was not reasonable.

The court's conclusion finds further support in an unpublished decision, *Bey v. Cimarossa*, 202 F.3d 272 (Table, text in WESTLAW), 2000 WL 12830 (7th Cir. 2000). In *Bey*, the court

10

reversed a trial court's decision to grant summary judgment in an excessive force case because the court determined there was a dispute as to whether or not the officer provided a warning prior to using the police dog. *Id.* at *2. The court stated that an officer's "failure to give a warning before releasing a police dog is objectively unreasonable in an excessive force context." *Id.* (quoting *Vathekan v. Prince Georges County*, 154 F.3d 173, 179 (4th Cir. 1998) ("failing to give a verbal warning before deploying a police dog to seize someone is objectively unreasonable and a violation of the Fourth Amendment").

There is no dispute in the case before this court that the Plaintiff heard an initial warning, from an unidentified person, that the dog was to be utilized in the search. There is a genuine issue of fact, however, regarding whether Officer Pacetti provided a warning to McGovern prior to ordering the dog to apprehend or seize Plaintiff. Officer Pacetti claims to have given a number of warnings prior to ordering his police dog to apprehend, but McGovern denies hearing them. Because there is a dispute as to whether or not Officer Pacetti did provide a warning, this court finds that there is a genuine issue of material fact precluding summary judgment.[5]

**Assault and Battery Claims**

Summary judgment will be denied on Plaintiff's state law claims for similar reasons. In Count II, McGovern claims that Officer Pacetti committed an assault and battery upon McGovern by ordering the police dog to bite him. Under Illinois law, "[a] person commits an assault when, without lawful authority, he engages in conduct which places another in reasonable apprehension of receiving a battery." 720 ILCS 5/12-1(a). A battery occurs when a person "intentionally or knowingly without legal justification and by any means, (1) causes bodily harm to an individual or

---

[5] The court recognizes that McGovern's failure to hear the warnings will not by itself require the conclusion that such a warning was not issued; a reasonable jury may well determine that Officer Pacetti acted reasonably in issuing a warning even if McGovern was unable to hear it.

11

(2) makes physical contact of an insulting or provoking nature with an individual." 720 ILCS 5/12-3(a). The Illinois Tort Immunity Act provides, however, that a public employee is not liable for acts performed in the course of law enforcement unless the public employee's conduct is "willful and wanton," 745 ILCS 10/2-202, that is conduct that "shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." 745 ILCS 10/1-210; *Smith v. City of Chicago*, 242 F.3d 737, 744 (7th Cir. 2001). Illinois law provides, further, that a police officer "is justified in the use of force which he reasonably believes to be necessary to defend himself to effect the arrest and of any force which he reasonably believes to be necessary to defend himself or another from bodily harm while making the arrest." 720 ILCS 5/7-5.

In this motion for summary judgment, Officer Pacetti argues that because his use of the police dog was reasonable under the Fourth Amendment's reasonableness standard, his actions were not wilful and wanton and he is, therefore, entitled to summary judgment on the assault and battery claim. Because this court has found disputes of material facts concerning the reasonableness of Officer Pacetti's conduct, however, Defendants' motion for summary judgment on this claim is also denied.

Finally, the Cook County Sheriff's Department seeks summary judgment under the Illinois Tort Immunity Act which provides that "[a] local public entity is not liable for an injury from an act or omission of its employee where the employee is not liable." Because this court has denied Officer Pacetti's motion for summary judgment, it follows that the County's motion must be denied as well.

12

## **CONCLUSION**

For the reasons set forth in this opinion, the court denies the Defendants' motion for summary judgment (Doc. No. 29-1).

ENTER:

Dated: January 17, 2003

REBECCA R. PALLMEYER
United States District Judge